## UNITED STATES COURT OF INTERNATIONAL TRADE

THE STATE OF OREGON, et al.,

Plaintiffs,

v.

DONALD J. TRUMP, et al.,

Defendants.

CASE NO. 26-01472

## DECLARATION OF HOWARD W. LUTNICK, UNITED STATES SECRETARY OF COMMERCE

I, Howard W. Lutnick, hereby state and declare as follows:

1.    I am the Secretary of Commerce for the United States and the head of the Department of Commerce, an Executive Department of the United States. *See* 5 U.S.C. § 101. The purpose of this declaration is to assert, in my official capacity and opinion, the critical role of the tariffs President Donald J. Trump has imposed under Section 122 of the Trade Act of 1974, 19 U.S.C. § 2132 ("Section 122") in redressing significant balance-of-payments issues that the United States faces, and the equal importance of maintaining the carefully designed scope of the Section 122 tariffs to most effectively redress these issues without impeding U.S. national security interests. The statements made herein are based on my personal knowledge and on information provided to me in my official capacity as Secretary of Commerce.

2.    I have been tasked by President Trump to lead his tariff and trade agenda.[1] As part of my duties as Secretary of Commerce, I have strategized with President Trump and

---

[1] *See* Statement by President-elect Donald J. Trump Announcing the Nomination of Howard Lutnick as Secretary of Commerce, The American Presidency Project, https://www.presidency.ucsb.edu/node/375586.

members of his cabinet on policies to conduct trade diplomacy and spur domestic investment, manufacturing, and export activity. Many of the fundamental problems the United States faces, ranging from the hollowing out of our defense-industrial and manufacturing base to balance-of-payment deficits and risk of significant currency depreciation, are caused by systemic trade imbalances with our foreign-trading partners.

3. The Department of Commerce has played a pivotal role in implementing the President's visionary trade policies. These policies have led to us securing historic trade deals and investment commitments from our trading partners, which are already yielding unprecedented returns that will contribute to redressing longstanding trade deficits and other economic issues. In the last month alone, there have been announcements on six different strategic investment projects that are directly tied to the U.S.-Japan trade deal, totaling over $100 billion of new investment in the United States and strengthening economic ties with one of our closest allies.[2]

4. While we continue to make great progress for the American people, certain adverse balance-of-payment conditions persist that require decisive action. On February 20, 2026, President Trump took such action by imposing a 10 percent tariff pursuant to Section 122. *See* Proclamation 11012 (Imposing a Temporary Import Surcharge to Address Fundamental International Payments Problems) ("Section 122 Proclamation"). The Section 122 Proclamation recognized that, based in part on data provided by the Bureau of Economic Analysis within the Department of Commerce,

---

[2] *See* Joint Announcement on the Japan-U.S. Strategic Investment, https://www.commerce.gov/news/press-releases/2026/03/joint-announcement-japan-us-strategic-investment.

the United States runs a substantial trade deficit, does not currently earn a net income from the capital and labor that it deploys abroad, and experiences significant net transfer payments flowing out of the country.

5.    The Section 122 Proclamation exceptions are carefully scoped to ensure broad and uniform application of the Section 122 tariffs. These specific exceptions are designed to prevent the unnecessary or ineffective application of Section 122 tariffs, such as for articles that are subject to existing import restrictions in the form of tariff programs administered by my Department under Section 232 of the Trade Expansion Act of 1962, as amended ("Section 232"). Certain other exceptions are necessary and appropriate based on the specific needs of the U.S. economy, such as for certain articles that are encompassed by Section 232 investigations but are not yet covered by Presidential action under Section 232 imposing tariffs.

6.    I have worked closely with the President as a member of his team of advisors evaluating the economic conditions and circumstances of the United States' current international payments disequilibrium. The current imbalance warrants the imposition of the Section 122 tariffs. I also worked closely with the President and his team to ensure that the Section 122 Proclamation exceptions were implemented in a manner fully consistent with the purposes and requirements of Section 122.

7.    As Secretary of Commerce, my responsibilities include overseeing all of the work of the Department of Commerce, including its work under Section 232. I am personally familiar with the Section 232 tariffs currently in effect, as well as the Section 232

3

investigations conducted by the Department during my tenure as Secretary of Commerce.

8. Under Section 232, I am authorized to conduct investigations into the effect of imports of articles and their derivatives on the national security of the United States. If I determine that imports of an investigated article or its derivatives threaten to impair the national security of the United States and the President concurs, the President may take actions to adjust imports to remedy the threat. Such adjustments of imports may take the form of tariffs, quantitative restrictions such as quotas, or both.

9. The Section 122 Proclamation excepts all articles and parts of articles currently or that later become subject to additional import restrictions imposed pursuant to Section 232. Articles that are currently subject to Section 232 tariff programs include steel, aluminum, copper, automobiles, lumber and timber, medium- and heavy-duty trucks, and certain pharmaceuticals and pharmaceutical ingredients, as well as certain parts and derivatives of these articles. Each Section 232 program is unique, and is carefully calibrated to the particular circumstances of, among other things, the nature of the subject article and its parts and/or derivatives, the relevant industry, and the national security interests and requirements of the United States.

10. The Department of Commerce has also conducted Section 232 investigations into imports of other articles that have not yet culminated in Presidential action imposing tariffs. These investigations include the following products identified in Clause 14 of the Section 122 Proclamation that identifies appropriate exceptions: commercial

aircraft and commercial aircraft parts, semiconductors and certain electronics containing semiconductors, certain pharmaceuticals and pharmaceutical ingredients, and critical minerals. The President has also imposed tariffs on some semiconductor articles as he continues to direct negotiations with trading partners on other semiconductor articles.

11. Imposing a Section 122 tariff on imported articles that are already subject to a Section 232 program would be unnecessary and ineffective in carrying out the purposes of Section 122. These imports are already subject to a carefully designed import restriction architecture under Section 232 to address an identified national security threat. The tariff rates and procedures that apply to articles subject to Section 232 tariffs therefore vary based on the particulars of the subject articles, the industry, and U.S. national security interests. Section 232 rates can also be determined in part by negotiations with trading partners. Imposing an additional baseline tariff on top of these individually designed Section 232 programs risks significantly impeding U.S. national security interests.

12. Section 122 tariffs are broad based and therefore do not address with the same precision the actions already taken pursuant to Section 232. For example, there are instances, such as with the 50 percent tariff applicable to imports of certain steel, aluminum, and copper products, where the Section 232 tariffs are much higher than the 15 percent maximum tariff rate authorized by law under Section 122. And in the case of both automobiles and medium- and heavy-duty trucks, the President imposed tariffs coupled with a carefully crafted tariff offset program to encourage expansion

of domestic production and reduce dependence on imports. This offset program serves to spur domestic production activities and therefore avoid significant disruption to the domestic assembly operations of both automobiles and trucks, which effectively addresses both the national security threat and the balance of payments concerns.

13. Other products for which action imposing tariffs under Section 232 remain pending also merit a Section 122 exception because they are vital to the needs of the United States economy. Those exceptions cover certain commercial aircraft and commercial aircraft parts, semiconductors and certain electronics containing semiconductors, certain pharmaceuticals and pharmaceutical ingredients, and critical minerals. While the Trump Administration continues to make great strides in bolstering domestic manufacturing capabilities within these critical industries, at present these articles are largely only available domestically in limited supply or otherwise rely on intricate global supply chains. And, in the case of parts, some imported articles consist of raw materials or inputs that are not produced in the United States in sufficient quantity. Further, tariffing these articles under Section 122 could result in substantial dislocations in the supply of needed goods for which the United States presently relies upon imports.

14. For example, in the case of semiconductors, the U.S. share of global chip fabrication capacity has declined from 37 percent in 1990 to less than 10 percent in 2024.[3] And

---

[3] *See* Raj Varadarajan et al, "Emerging Resilience in the Semiconductor Supply Chain," Semiconductor Industry Association & Boston Consulting Group (May 2024) at 15, available at https://www.semiconductors.org/wp-content/uploads/2024/05/Report_Emerging-Resilience-in-the-Semiconductor-Supply-Chain.pdf.

in 2024, just nine percent of chips were fabricated in the United States.[4]  A recent study conducted by the Bureau of Industry and Security within my Department also determined that less than two percent of all chips likely went through necessary assembly, testing, and packaging ("ATP") operations in the United States.[5]  Current U.S. semiconductor demand is estimated at $130 billion for chips embedded in semiconductor-containing derivative products alone.  Imposing the Section 122 tariff on semiconductors and semiconductor-containing electronics prior to implementation of the precise and calibrated 232 tariffs tailored to this industry would therefore invariably cause significant disruptions to U.S. supply chains and shortages due to the current lack of complete end-to-end production capacity to satisfy domestic demand.  The President's existing Section 232 actions related to semiconductors recognized that current conditions warranted a targeted action regarding semiconductor tariffs at this time, but that future, additional and tailored actions may be taken after negotiations with trading partners.  These economic conditions make clear that an exception for the Section 122 tariffs is warranted based on the needs of the U.S. economy due to lack of domestic supply.  A broad Section 122 tariff untailored to this specific sector would risk hastening adverse consequences to the U.S. economy and national security that the President has wisely sought to avoid.

---

[4] *See* SEMI, "World Fab Forecast—1Q 2025" (June 5, 2025) (Estimate based on output capacity aggregated at the national level), available at https://www.semi.org/sites/semi.org/files/2025-05/SEMI_Capex_market_outlook_5.28.2025_shared.pdf.

[5] *See* Bureau of Industry and Security, "Assessment of the Status of the Microelectronics Industrial Base in the United States," at 33 (2023), available at https://www.bis.doc.gov/index.php/documents/technology-evaluation/3402-section-9904-report-final-20231221/file.

15. The same market conditions and rationale applies to the other Section 232-based product exceptions at issue. As another example, imports of finished dosage form pharmaceuticals rose from $10 billion in 2000 to $100 billion in 2024, leading to a more than $80 billion trade deficit in finished dosage form pharmaceuticals in 2024.[6] Recent data also suggests that China and India accounted for nearly two-thirds of all active pharmaceutical ingredients ("API") manufactured worldwide.[7] For critical minerals, the United States was completely import reliant for 12 critical minerals, with an additional 29 critical minerals exceeding 50 percent net import reliance in 2024.[8] Subjecting imports of these minerals to tariffs under Section 122 would harm industries dependent on these critical minerals and undermine the President's historic efforts that are securing new and sustainable alternative critical mineral sources. Like semiconductors, the pharmaceutical and critical minerals sectors require a calibrated tariff approach that accounts for sector-specific dynamics that a baseline tariff rate does not provide, and which would instead likely lead to undesirable impacts on global supply chains.

16. These examples demonstrate how these Section 232-based product exceptions plainly fall within product exceptions contemplated by Section 122(e). The President's Section 122 Proclamation rightly—and smartly—strikes a carefully measured

---

[6] *See* U.S. International Trade Commission DataWeb, https://dataweb.usitc.gov/.

[7] *See* Mercator Institute for China Studies (Merics), "Europe's increasing reliance on China for critical drugs + Foreign investment + China-Africa" (Sept. 12, 2024), available at https://merics.org/en/merics-briefs/europes-increasing-reliance-china-critical-drugs-foreign-investment-china-africa.; Statista, "Distribution of active pharmaceutical ingredient (API) production volume worldwide as of 2023, by region" (Oct. 10, 2024), available at https://www.statista.com/statistics/1498065/api-production-volume-by-region/.

[8] U.S. Department of the Interior, U.S. Geological Survey *Mineral Commodity Summaries 2025* (March 2025), available at https://pubs.usgs.gov/periodicals/mcs2025/mcs2025.pdf.

balance between a broad and uniform tariff aimed to redress significant balance-of-payment trends and overall disequilibrium, while at the same time recognizing product exceptions that will preserve the carefully crafted national security tariff programs that I am proud to oversee on behalf of the President and the citizens of the United States.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 2 day of April, 2026, in the City of Washington, District of Columbia.

_____
Howard W. Lutnick
41st United States Secretary of Commerce