**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:    THE HONORABLE MARK A. BARNETT, CHIEF JUDGE
THE HONORABLE CLAIRE R. KELLY, JUDGE
THE HONORABLE TIMOTHY C. STANCEU, SENIOR JUDGE

| | |
|---|---|
| THE STATE OF OREGON, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>    Defendants. | Court No. 26-01472 |

| | |
|---|---|
| BURLAP AND BARREL, INC.; BASIC FUN, INC.,<br><br>    Plaintiffs,<br><br>    v.<br><br>DONALD J. TRUMP in his official capacity as President of the United States, *et al.*,<br><br>    Defendants. | Court No. 26-01606 |

**<u>ORDER</u>**

Upon consideration of defendants' motion for a stay of the enforcement of judgments entered May 7, 2026, to permanently enjoin the United States from collecting tariffs pursuant to Proclamation No. 11012 and to refund already collected tariffs from plaintiffs the State of Washington, Burlap and Barrel, Inc., and Basic Fun, Inc., it is hereby

ORDERED that defendants' motion is granted, and it is further

2

ORDERED that the effectuation of Slip Op. 26-47 and judgments (*The State of Oregon, et al. v. United States*, Court No. 26-01472, ECF No. 50; *Burlap and Barrel, Inc. et al. v. United States*, Court No. 26-01606, ECF No. 39) is hereby stayed pending the entry of a final and conclusive judgment after all appeals.

Dated:_____                    _____
        New York, New York                                      JUDGE

## TABLE OF CONTENTS

BACKGROUND ...................................................................................................................2

ARGUMENT......................................................................................................................4

    I.    Legal Standard .........................................................................................................4

    II.   Defendants Will Suffer Irreparable Harm Without a Stay....................................4

    III.  A Stay Will Not Substantially Injure Other Parties ...........................................11

    IV.  The Public Interest Is Served By a Stay.............................................................12

    V.   The United States Is Likely to Succeed on Appeal.............................................13

CONCLUSION..................................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Asociacion de Exportadores e Industriales de Aceitunas de Mesa v. United States*,
102 F.4th 1252 (Fed. Cir. 2024) ...................................................................................... 15

*Azar v. Allina Health Servs.*,
587 U.S. 566 (2019) ........................................................................................................ 14

*Corus Grp. PLC v. ITC*,
352 F.3d 1351 (Fed. Cir. 2003) ...................................................................................... 13

*Global Dynamics, LLC v. United States*,
138 Fed. Cl. 207 (2018) .................................................................................................. 12

*Guerra v. Scruggs*,
942 F.2d 270 (4th Cir. 1991) .......................................................................................... 10

*Hanson v. District of Columbia*,
120 F.4th 223 (D.C. Cir. 2024) ......................................................................................... 9

*Heraeus-Amersil, Inc. v. United States*,
1 C.I.T. 270 (1981) ......................................................................................................... 12

*Hilton v. Braunskill*,
481 U.S. 770 (1987) .......................................................................................................... 4

*Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*,
17 F.3d 691 (4th Cir. 1994) ............................................................................................ 12

*Humane Soc. of U.S. v. Clinton*,
236 F.3d 1320 (Fed. Cir. 2001)......................................................................................... 5

*In re NTE Connecticut, LLC*,
26 F.4th 980 (D.C. Cir. 2022) ........................................................................................... 8

*Nken v. Holder*,
556 U.S. 418 (2009)..................................................................................................... 4, 12

*PrimeSource Bldg. Prods., Inc. v. United States*,
535 F. Supp. 3d 1327 (Ct. Int'l Trade 2021) ................................................................. 12

*Scripps-Howard Radio, Inc. v. FCC*,
316 U.S. 4 (1942).............................................................................................................. 4

*Standard Havens Prods., Inc. v. Gencor Indus., Inc.*,
897 F.2d 511 (Fed. Cir. 1990)........................................................................................... 4

*Sunpreme Inc. v. United States*,
  2017 WL 65421 (Ct. Int'l Trade Jan. 5, 2017) .......................................................... 11

*Transpacific Steel LLC v. United States*,
  840 F. App'x 517 (Fed. Cir. 2020) ........................................................................... 8

*Trump v. CASA, Inc.*,
  606 U.S. 831 (2025) .................................................................................................. 7

*Trump v. Orr*,
  146 S. Ct. 44 (2025) .................................................................................................. 7

*USP Holdings, Inc. v. United States*,
  36 F.4th 1359 (Fed. Cir. 2022) ............................................................................... 13

*V.O.S. Selections, Inc. v. United States*,
  772 F. Supp. 3d 1350 (Ct. Int'l Trade 2025) ........................................................... 10

*Van Buren v. United States*,
  593 U.S. 374 (2021) ................................................................................................ 14

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ............................................................................................ 9, 10, 12

*Ziglar v. Abbasi*,
  582 U.S. 120 (2017) .................................................................................................. 4

**Statutes**

19 U.S.C. § 2132(a) ........................................................................................................ 7

**Rules**

Fed. R. Civ. P. 62(e) ...................................................................................................... 9

USCIT R. 62(d) .............................................................................................................. 4

USCIT R. 62(e) ........................................................................................................... 4, 9

USCIT R. 56(f) ............................................................................................................... 3

**Other Authorities**

Imposing a Temporary Import Surcharge To Address Fundamental International
  Payments Problems, 91 Fed. Reg. 9339 (Feb. 20, 2026) .................................. 5, 7, 13

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:      THE HONORABLE MARK A. BARNETT, CHIEF JUDGE
             THE HONORABLE CLAIRE R. KELLY, JUDGE
             THE HONORABLE TIMOTHY C. STANCEU, SENIOR JUDGE

|  |  |
|---|---|
| THE STATE OF OREGON, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Court No. 26-01472 |
| | ) |
| DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| BURLAP AND BARREL, INC.; BASIC FUN, INC., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Court No. 26-01606 |
| | ) |
| DONALD J. TRUMP in his official capacity as President of the United States, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MOTION FOR A STAY
OF ENFORCEMENT OF JUDGMENT PENDING APPEAL**

Pursuant to Rule 62 of the Rules of this Court, defendants respectfully request that the

Court stay the enforcement of its judgments of May 7, 2026, pending defendants' appeal. *The*

*State of Oregon, et al. v. United States*, Court No. 26-01472, ECF No. 50; *Burlap and Barrel,*

*Inc. et al. v. United States*, Court No. 26-01606, ECF No. 39.  We have already filed notices of

appeal in both cases.  Given the significance of these issues and the immediate effect of this

Court's order, defendants intend to expeditiously seek a stay from the Federal Circuit later today, May 11, 2026, and will of course relay the Court's decision on this motion to the Federal Circuit immediately.

Without a stay, defendants will be harmed in three critical ways. First, the injunction will severely undermine the President's trade agenda and will destabilize efforts to remedy our longstanding trade deficit. Second, the United States faces significant risk that it will be permanently deprived of the revenue these tariffs have generated and will generate. Third, U.S. Customs and Border Protection (CBP) will not be able to effectuate the Court's injunction without diverting its already-limited resources from the vast effort to refund duties paid under the International Emergency Economic Powers Act (IEEPA).

By contrast, a stay will not harm plaintiffs. Even if the judgments were affirmed on appeal, plaintiffs still would not be harmed because defendants will issue refunds if directed to do so by the Court, including any post-judgment interest that accrues during the pendency of the appeal. A stay of the enforcement of judgment would merely preserve the status quo during the pendency of our appeal.

If the Court denies this motion, defendants respectfully request an administrative stay of the judgment for seven days to allow time for the Federal Circuit and, if necessary, the Supreme Court to consider a stay.

## BACKGROUND

Plaintiffs, two importers (called the private plaintiffs) and 24 states, filed separate suits in March 2026, challenging the President's imposition of tariffs under Section 122 of the Trade Act 1974. *Burlap and Barrel*, Compl., ECF No. 2; *Oregon*, Compl., ECF No. 2. Under the Court's scheduling order, ECF No. 24, plaintiffs filed motions for summary judgment and in the

2

alternative for preliminary injunction. *Burlap and Barrel*, ECF No. 11; *Oregon*, ECF No. 25. Defendants filed responses to both motions as well as answers to the complaints. *Burlap and Barrel*, ECF Nos. 15, 16; *Oregon*, ECF Nos. 34, 35. The Court held a hearing on April 10, 2026. *Burlap and Barrel*, ECF No. 35; *Oregon*, ECF No. 46.

On May 7, 2026, the Court declared Proclamation 11102 invalid, granted summary judgment for the private plaintiffs and the State of Washington, entered a permanent injunction against the enforcement of the challenged duties for those specific plaintiffs, and ordered that any duties paid by those plaintiffs be refunded. *See* Slip Op. 26-47 (May 7, 2026). Specifically, the Panel Majority held that Proclamation 11012 failed to identify "balance-of-payments deficits" as Congress understood that phrase when it enacted the Trade Act of 1974. *Id.* at 28-46. The Panel Majority reasoned that the term "balance-of-payments deficits" in Section 122 could only mean deficits in liquidity, official settlements, or the basic balance—measures of the United States' balance-of-payments position referenced in the legislative history. *Id.* at 45. Although the Panel Majority recognized that Congress extensively considered options for measuring the balance of payments but omitted a definitional provision from the final text of Section 122, the Panel Majority concluded that congressional reports tables listing "liquidity," "official settlements," and the "basic balance" as subcategories supplied the only valid methodology for identifying balance-of-payments deficits. *Id.* at 34-45. Judge Stanceu dissented, stating he would have denied plaintiffs' motion and provided the parties "notice and a reasonable time to respond" according to the procedure in USCIT Rule 56(f) because the majority granted summary judgment "on grounds not raised by a party." *Id.* at 54, 77-88; USCIT R. 56(f)(2). Judge Stanceu also explained why he disagreed with the Panel Majority's interpretation. Slip Op. 26-47 at 54-88.

3

**ARGUMENT**

**I.     Legal Standard**

The power to stay a judgment pending appeal is "part of a court's 'traditional equipment

for the administration of justice.'" *Nken v. Holder*, 556 U.S. 418, 427 (2009) (quoting *Scripps-*

*Howard Radio, Inc. v. FCC*, 316 U.S. 4, 9-10 (1942)).  The purpose of a stay pending appeal is

to preserve the status quo so that the appellate court may take the necessary time to make a

reasoned decision.  *Id.* at 429-30.  Rule 62(d) of the Rules of this Court applies to stays of

judgments granting injunctions pending an appeal.  Rule 62(d) provides that "the court may

suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the

opposing party's rights."  Rule 62(e) eliminates the bond requirement "when granting a stay on

an appeal by the United States."

The four factors relevant to issuance of a stay of judgment pending appeal are well

established: "(1) whether the stay applicant has made a strong showing that he is likely to

succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay;

(3) whether issuance of the stay will substantially injure the other parties interested in the

proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776

(1987) (citations omitted); *see also Standard Havens Prods., Inc. v. Gencor Indus., Inc.,* 897

F.2d 511, 512 (Fed. Cir. 1990).  As discussed below, all four factors support granting

defendants' motion.

**II.     Defendants Will Suffer Irreparable Harm Without a Stay**

The United States faces irreparable harm absent a stay of the Court's judgments

enjoining the challenged tariffs.  The Constitution grants the President the power to conduct

foreign affairs and manage national security.  U.S. Const. art. II, § 2; *see also Ziglar v. Abbasi,*

4

582 U.S. 120, 123 (2017) ("National-security policy . . . is the prerogative of the Congress and the President."); *Humane Soc. of U.S. v. Clinton*, 236 F.3d 1320, 1329 (Fed. Cir. 2001) ("in cases in which international relations are concerned, the President plays a dominant role"). Respectfully, the Court erred by interfering with the President's exercise of his congressionally-directed duty to address balance-of-payments deficits and their resulting harms. It should at minimum enter a stay to limit the irreparable harm to ongoing trade negotiations, as well as to U.S. economic and national security, while defendants appeal.

The President has determined that the balance-of-payments deficit he identified significantly harms U.S. national interests, including economic and national security interests, and has determined that an import surcharge in the form of duties is required to deal with those problems. *See, e.g.*, Proc. No. 11012, 91 Fed. Reg. 9339, 9341 (Feb. 20, 2026) ("I find that fundamental international payments problems within the meaning of section 122 exist; that those problems significantly harm United States national interests, including economic and national security interests; and that special measures to restrict imports are required to address those problems, as authorized by section 122."); *id.* at 9342 ("Restricting imports through the surcharge imposed in this proclamation is required to address the fundamental international payments problems within the meaning of section 122 that I have found to exist. The surcharge imposed in this proclamation will deal with the large and serious United States balance-of-payments deficit.").

The Court's injunction thus constitutes an enormous intrusion on the President's conduct of foreign affairs and efforts to address the rapidly deteriorating balance-of-payments position of the United States. This is particularly so given the size and persistence of the U.S. current account deficit and the fact that further declines in the United States' net negative international

5

investment position could lead to a disorderly external rebalancing of the U.S. economy.  As

Ambassador Greer explains, the current crisis "endangers our ability to finance our spending,

erodes investor confidence in our economy, and distresses financial markets."  Greer Dec. ¶ 7.

Secretary Lutnick confirms Ambassador Greer's concerns in his attached declaration,

stating that removing the tariffs "would remove the only global baseline currently restraining an

unprecedented spike in import flows. . . ."  Lutnick Dec. ¶ 16.  As the Secretary explains, the

tariffs help "prevent[] the resurgence of conditions such as extremely high imports and trade

deficits that contributed to the balance of payments problems found in" the President's

proclamation.  Lutnick Dec. ¶ 7.  "Importers respond to tariff expectations," and "[t]rading

partners respond to tariff expectations."  Lutnick Dec. ¶ 14.  As a result, Secretary Lutnick attests

that "premature removal of the surcharge would usher in a flood of imports that characterized the

pre-global tariff landscape."  Lutnick Dec. ¶ 7.  The Secretary expects that, without the requested

stay, "goods imports in May 2026 and subsequent months would increase above the levels that

would otherwise prevail with the surcharge in place."  Lutnick Dec. ¶ 18.  Plaintiffs' importation

of merchandise without paying the applicable duties would undermine the President's goals, and

the requested injunction would weaken the President's efforts to reverse these trends.

Likewise, the Court's injunction, if not stayed, will disrupt ongoing negotiations that seek

to address the balance-of-payments issues the United States is facing.  Ambassador Greer

highlights this point, emphasizing that the Section 122 tariffs have "incentivized trading partners

to remain at the negotiating table by underscoring President Trump's determination to address

fundamental imbalances in the global trading system."  Greer Dec. ¶ 5.  The President's tariff

agenda has resulted in nine new trade agreements and many more framework agreements, all of

which have created "more market access for American workers, producers, and service

providers, than decades of traditional free trade agreements . . . ."  Greer Dec. ¶ 4.  Similarly, Secretary Lutnick warns that the injunction will "reduce incentives for foreign governments to address policies that undermine United States commerce and national security," Lutnick Dec. ¶ 21, and "undermin[e] our position with trading partners during ongoing negotiations," *id.* ¶ 29. The United States cannot "reconstruct the negotiating leverage, market expectations, or trade flows that would be lost during th[e] period" of the Court's injunction."  Lutnick Dec. ¶ 8.

And there is a strong public interest in allowing the Executive Branch to implement administration policies.  *See, e.g.*, *Trump v. Orr*, 146 S. Ct. 44, 46 (2025) (injunctions against an "Executive Branch policy," especially one "with foreign affairs implications" by their nature impose "irreparable injury") (quoting *Trump v. CASA, Inc.*, 606 U.S. 831, 859 (2025)).

That is especially true here where any injunction causes more legal questions than it solves.  As the Court is aware, Section 122 import surcharges may not exceed a period of 150 days, "unless such period is extended by Act of Congress."  *See* 19 U.S.C. § 2132(a).  As of today, those duties will only be in effect for ten more weeks, until July 24, 2026.  *See* 91 Fed. Reg. at 9343.  The temporary nature of the tariffs matters.  If the injunction stands, Secretary Lutnick says, "the harm cannot be repaired later."  Lutnick Dec. ¶ 8.  The United States faces real risk that it may not be able to recover all the lost import-restricting effect of a temporary measure after the statutory period has run.  "Nor can the United States recover the negotiating leverage, market expectations, or trade flows that would be lost during that period." *Id.*  "Once goods enter the United States in higher volumes, the import-restricting effect of the temporary surcharge for that period is lost."  Lutnick Dec. ¶ 24.

The Court's opinion does not address whether Section 122's 150-day clock is suspended while the surcharge is enjoined (and plaintiffs will surely argue that it is not).  The Court's

injunction would require the United States to stop collecting those duties—first, from the private

plaintiffs and the State of Washington, and then from the countless additional plaintiffs sure to

bring their own actions seeking the same injunctive relief.  Therefore, even if defendants are

successful on appeal, the United States may never be able to collect some of the duties that could

otherwise have been collected during the remaining ten weeks of Section 122's time limit.  Lord

Dec. ¶ 6 ("If liquidation is not extended, CBP will not be able to reliquidate the entries beyond

the 90-day reliquidation period absent a court order.").  And, the injunction creates a serious risk

that importers will take advantage of any gap in the Government's ability to collect Section 122

duties by increasing imports now in order to avoid future duties, including future Section 122

duties if defendants prevail on appeal in this matter.  Lutnick Dec. ¶ 18 (importers and foreign

producers "will have a strong incentive to accelerate shipments into the United States before

other tariff measures are finalized or implemented").

Similarly, the injunction requires CBP to issue refunds.  Even if defendants are successful

on appeal, it is possible that any refunded duties may never be collected.  "Ordinarily, 'economic

loss does not, in and of itself, constitute irreparable harm[,]'" "because in most circumstances

financial harms can be remedied through subsequent legal action." *In re NTE Connecticut, LLC*,

26 F.4th 980, 990 (D.C. Cir. 2022).  But financial injury can be irreparable "where no adequate

compensatory or other corrective relief will be available at a later date, in the ordinary course of

litigation." *Id.* (quotation marks omitted).  That is true here.  Therefore, the Court's injunction

has the likely effect of nullifying the effects of the remaining Section 122 timeline, even if

defendants succeed on appeal.

Indeed, for the reasons articulated by Judge Taranto in his dissent from an unpublished

order denying a stay in *Transpacific Steel LLC v. United States*, 840 F. App'x 517 (Fed. Cir.

2020), there is a reasonable argument that an order requiring the Government to pay refunds should *automatically* be stayed under Rule 62(e) of the Rules of this Court, equivalent to Federal Rule of Civil Procedure 62(e), which provides that monetary judgments against the Federal Government are exempt from the usual requirement to post a bond in order to obtain an automatic stay pending appeal, *see* USCIT R. 62(e); Fed. R. Civ. P. 62(e).  The Court can obviate the question of whether an automatic stay applies by granting one under the usual equitable standard.

Finally, the injunction would cripple CBP's ability to function at a particularly critical time.  CBP explains that to effectuate the injunction, it must "reprogram the Automated Commercial Environment (ACE), CBP's official system of record for imported merchandise, to allow the affected importers to submit entry summaries without declaring" Section 122 duties and depositing the associated amounts.  Lord Dec. ¶ 5.  Such work first requires CBP to obtain confirmation of the plaintiffs' unique importer of record numbers—and although defendants' counsel requested this information from the plaintiffs on May 8, as of the time of this filing the Government is still awaiting this information from the State of Washington for all of its instrumentalities that have  importer of record numbers.  Lord Dec. ¶ 5.  Only upon receiving this information from the plaintiffs can CBP complete the work to reprogram ACE.  Lord Dec. ¶ 12.  These circumstances present real risk that CBP, despite best efforts, may not be able to fully comply with the injunction in the timeframe the injunction requires.

Furthermore, the Court's decision will have the practical effect of sending hundreds, if not thousands, of plaintiffs to this Court to seek similar relief.  *See, e.g.*, *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (cautioning courts to "pay particular regard for the public consequences in employing the extraordinary remedy of injunction"); *Hanson v. District of*

9

*Columbia*, 120 F.4th 223, 247-48 (D.C. Cir. 2024) (per curiam) ("limiting injunctive relief to the four appellants in this case" is insufficient because "a follow-on class-action suit seeking the same relief would inevitably follow and almost inevitably have to be granted"); *Guerra v. Scruggs*, 942 F.2d 270, 275 (4th Cir. 1991) (considering the aggregate harm of additional injunctions in similar cases). Indeed, nearly four thousand cases seeking injunctions for individual plaintiffs relating to IEEPA duties were filed in the wake of the Court's decision in *V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d 1350 (Ct. Int'l Trade 2025). We have every reason to believe that importers will do the same in the wake of the Court's decision in this matter. The cascading effect of that expected flood amplifies the harm described by CBP by many orders of magnitude. As Mr. Lord explains, the many steps CBP must perform to effectuate more injunctions becomes "increasingly unworkable." Lord Dec. ¶ 7.

Specifically, to protect the revenue, CBP would try to extend the time period for the liquidation of the entries covered by this lawsuit (those whose claims have not been dismissed), rather than allow entries to liquidate and, absent a court order, risk not being able to assess the duties that may ultimately be owed. Lord Dec. ¶ 6. Should additional plaintiffs file actions and the Court's injunction be applied to their imports, "CBP will need to ascertain all affected IOR numbers," "constantly update the ACE programming to maintain [the] expanding list of importers," and "manually extend each importers' affected entries." *Id.* ¶¶ 6, 12. That process "will become increasingly unworkable," given that more than 13 million entry summaries have been filed with Section 122 duties to date. *Id.* ¶ 7. The additional expected injunctions will threaten to cripple the very system entrusted to effectuate the injunction. *See Winter*, 555 U.S. at 24; *Hanson*, 120 F.4th at 247-48; *Guerra*, 942 F.2d at 275.

Additionally, even if the Government prevails on appeal, "CBP may not be able to

retroactively collect the outstanding Section 122 duties." Lord Dec. ¶ 8. As Mr. Lord explains, "[f]or entries which CBP is enjoined from collecting Section 122 duties that it subsequently is able to liquidate or reliquidate with Section 122 duties, . . . CBP would face significant risk that bills issued upon such liquidations or reliquidations would go unpaid." *Id.* This is because CBP's general continuous bonding formula for importers' unpaid bills is "not likely [to] cover the full amount of Section 122 duties subsequently assessed." *Id.*

Without a stay, the Court's injunction also threatens CBP's ongoing efforts to effectuate the Supreme Court's decision in *Learning Resources*. Mr. Lord explains that to effectuate the injunction here, CBP will have to "divert resources" from the IEEPA refund process. Lord Dec. ¶ 12. As the Court notes, CBP has acted in good faith to implement significant changes to ACE to accommodate the tens of millions of IEEPA refunds it must process. *See* Slip Op. 26-47 at 50 n.40; *Atmus Filtration, Inc. v. United States*, No. 26-1259, ECF 33, 38, 47, 51; *Euro-Notions Florida, Inc. v. United States*, No. 25-595, ECF 15, 26. That effort is far from over—CBP is still in the early phases of refunding and has dedicated "substantially all of its available resources . . . to maintaining and improving" the process. Lord Dec. ¶ 12. CBP lacks the resources to staff both efforts simultaneously, nor should it be required to when plaintiffs will be refunded the Section 122 tariffs for their imports should they ultimately prevail in a final and unappealable decision, as discussed below.

## III.    A Stay Will Not Substantially Injure Other Parties

In sharp contrast to the extraordinary harm to defendants, a stay will not substantially injure the plaintiffs. If a stay is entered and the Government does not prevail on appeal, any plaintiff who is an importer will receive payment on their refund, with interest, if and when ordered by the courts. "[T]here is virtually no risk" to any importer that they "would not be made

11

whole" should they prevail on appeal and the tariffs are held to be refundable. *See Sunpreme Inc. v. United States*, 2017 WL 65421, at *5 (Ct. Int'l Trade Jan. 5, 2017). The most "harm" that could incur would be a delay in collecting on deposits. This harm is, by definition, not irreparable. *See Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 694 (4th Cir. 1994). As a result, plaintiffs would not be substantially injured and a stay would appropriately preserve the status quo until the appeals process has been finalized.

## IV.    The Public Interest Is Served By a Stay

The balance of equities and the public interest—which merge where, as here, "the Government is the opposing party," *Nken*, 556 U.S. at 435—strongly favor a stay. The public interest requires that the President be able to swiftly address identified threats to the United States' economy, military preparedness, and national security. *See Winter*, 555 U.S. at 24; *PrimeSource Bldg. Prods., Inc. v. United States*, 535 F. Supp. 3d 1327, 1335 (Ct. Int'l Trade 2021) (concluding that "the public interest favors allowing the government to exercise its lawful authority" and granting stay pending appeal).

Protecting the public fisc is also an important consideration in deciding whether to stay the enforcement of a judgment pending the resolution of an appeal. *See, e.g., Heraeus-Amersil, Inc. v. United States*, 1 C.I.T. 270, 270 (1981); *Global Dynamics, LLC v. United States*, 138 Fed. Cl. 207, 211 (2018) ("protecting the public fisc is . . . a strong public interest" (cleaned up)). Any potentially irrecoverable funds (and, to the extent refunds and entries without the tariffs are recoverable, what would essentially be an extended loan) continue to perpetuate the circumstances that have atrophied the domestic manufacturing industry—the national emergency and national security harms that the tariffs were designed to protect against.

12

## V.    The United States Is Likely to Succeed on Appeal

Finally, the Court should stay its order because defendants are likely to succeed on appeal. The question here is whether the President "clear[ly] misconstru[ed]" his statutory authority to deal with large and serious balance-of-payments deficits under Section 122. *USP Holdings, Inc. v. United States*, 36 F.4th 1359, 1365-66 (Fed. Cir. 2022) (citing *Corus Grp. PLC v. ITC*, 352 F.3d 1351, 1356 (Fed. Cir. 2003)). In issuing Proclamation 11012, the President determined that "fundamental international payments problem within the meaning of section 122 exist," and that "the United States balance-of-payments position, under any reasonable understanding of the term in the context of section 122, is currently a large and serious deficit." *See* 91 Fed. Reg. at 9340. In making this determination, the President explained that "United States runs a trade deficit, does not currently make a net income from the capital and labor that it deploys abroad, and experiences more transfer payments, on net, flowing out of the country than into the country." *Id.*

Despite this finding grounded in the statutory text, the Panel Majority concluded that the President misconstrued his statutory authority, not based on statutory text, but based on "legislative history" indicating that "Congress understood balance-of-payments deficits to refer, at the time, to deficits in (1) liquidity, (2) official settlements, or (3) basic balance." Slip Op. 26-47 at 33. Respectfully, the Panel Majority erred, and there is a substantial likelihood that the Federal Circuit will disagree with this Court's judgment on appeal. As the Proclamation recognizes, and as economists have long understood, there are multiple ways of calculating a balance-of-payments deficit. Whatever other methods might be viable, the approach taken here—treating as a large and serious balance-of-payments deficit a deficit in the current account

13

stemming from a trade imbalance, coupled with a net negative international-investment position equal to 90 percent of U.S. gross domestic product—is not a clear misconstruction of the statute.

First, Congress not only did not define the term "balance-of-payments deficits," but it *declined* to enact definitional language included in a prior version of the bill.  Because the term is a technical one, its interpretation must be driven by how it is understood in the relevant field of expertise.  *See Van Buren v. United States*, 593 U.S. 374, 388 (2021).  As our summary judgment response demonstrated, the approach taken by the President here is consistent with how economists understood the phrase "balance-of-payments deficit[]" both in 1974 and today.  Plaintiffs' approach, by contrast, is not—as all members of the Panel correctly recognized.

In advancing a third, novel interpretation that no plaintiff proffered, the Panel Majority looked to a portion of legislative history.  But "legislative history is not the law."  *Azar v. Allina Health Servs.*, 587 U.S. 566, 579 (2019).  Worse yet, the Panel Majority relied on weak legislative history—including language in a committee staff report—which does not even reflect the legislative history as a whole, as the dissent explains.  *See* Slip Op. 26-47 at 56.  In the same Senate staff report the Panel Majority relies on, the dissent identifies evidence "that the country's current account balance," on which the challenged Proclamation rests, "could have been considered to be a measure of the balance of payments in 1974."  *See id.* at 63-64.

What is unquestioned is that the phrase "balance-of-payments deficit" is an economic term of art with a range of accepted meanings.  The best reading of the statute, then, is that Section 122 allows the President to act in response to a set of circumstances that constitutes a "balance-of-payments deficit" within an economically reasonable understanding of that phrase.  This reading recognizes that when Congress uses an economic term of art subject to determination by a range of reasonable economic methodologies, it leaves to the President and

14

his advisers the option of invoking any of those methodologies. *See Asociacion de Exportadores e Industriales de Aceitunas de Mesa v. United States*, 102 F.4th 1252, 1261 (Fed. Cir. 2024) (if a term is "general but not ambiguous," it is "more properly viewed as one involving implied delegation of adjudicative authority" to the Executive Branch).

The Federal Circuit will review the question regarding the interpretation of Section 122 *de novo* and is likely to hold that the President acted within his properly delegated authority and did not clearly misconstrue the statute in imposing the challenged tariffs. This Court should grant a stay pending appeal.

## CONCLUSION

For these reasons, we respectfully request that Court stay enforcement of its judgments pending resolution of all appeals.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

ERIC J. HAMILTON
Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/Claudia Burke
CLAUDIA BURKE
Deputy Director
JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
PO Box 480, Ben Franklin Station
Washington, DC 20044
(202) 353-9063
Claudia.Burke@usdoj.gov

Dated:  May 11, 2026                    *Attorneys for Defendants*

16

**CERTIFICATE OF COMPLIANCE**

I hereby certify, pursuant to section 2(B)(1) of the Standard Chambers Procedures of this Court, that this brief contains 4,340 words, excluding the table of contents, table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature, as calculated by the word processing system used to prepare this brief (Microsoft Word).

<u>/s/ Claudia Burke</u>
CLAUDIA BURKE