# UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:    THE HONORABLE MARK A. BARNETT, CHIEF JUDGE
THE HONORABLE CLAIRE R. KELLY, JUDGE
THE HONORABLE TIMOTHY C. STANCEU, JUDGE

| | |
|---|---|
| **THE STATE OF OREGON, et al.,** | |
| **Plaintiffs,** | |
| **v.** | **Court No. 26-01472** |
| **DONALD J. TRUMP, in his official capacity as President of the United States, et al.,** | |
| **Defendants.** | |
| **BURLAP AND BARREL, INC., et al.,** | |
| **Plaintiffs,** | |
| **v.** | **Court No. 26-01606** |
| **DONALD J. TRUMP, in his official capacity as President of the United States, et al.,** | |
| **Defendants.** | |

## PLAINTIFF STATES' RESPONSE TO DEFENDANTS' MOTION TO STAY

Case 1:26-cv-01472-3JP     Document 59     Filed 05/19/26     Page 2 of 20

**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:     THE HONORABLE MARK A. BARNETT, CHIEF JUDGE
            THE HONORABLE CLAIRE R. KELLY, JUDGE
            THE HONORABLE TIMOTHY C. STANCEU, JUDGE

| | |
|---|---|
| **THE STATE OF OREGON, et al.,**<br><br>    **Plaintiffs,**<br><br>    **v.**<br><br>**DONALD J. TRUMP, in his official capacity as President of the United States, et al.,**<br><br>    **Defendants.** | **Court No. 26-01472** |
| **BURLAP AND BARREL, INC., et al.,**<br><br>    **Plaintiffs,**<br><br>    **v.**<br><br>**DONALD J. TRUMP, in his official capacity as President of the United States, et al.,**<br><br>    **Defendants.** | **Court No. 26-01606** |

## <u>ORDER</u>

Upon consideration of Defendants' Motion for Stay Pending Appeal, Plaintiff States'

Response, and the record thereon, it is hereby

ORDERED that the motion for stay is DENIED.

_____
JUDGE

Dated: _____
    New York, New York

**TABLE OF CONTENTS**

TABLE OF CONTENTS...................................................................................................i

TABLE OF AUTHORITIES ..........................................................................................ii

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................. 1

III.    LEGAL STANDARD.......................................................................................... 2

IV.     ARGUMENT....................................................................................................... 2

        A.      Defendants Cannot Show They Are Likely to Succeed on Appeal. ....................... 2

        B.      The CIT's Injunction Will Not Irreparably Harm Defendants. ............................. 4

        C.      The Remaining Equitable Factors Weigh Against a Stay...................................... 6

V.      CONCLUSION.................................................................................................... 8

CERTIFICATE OF COMPLIANCE............................................................................. 15

**TABLE OF AUTHORITIES**

**STATUTES**

19 U.S.C. § 2132..................................................................................................... *passim*

Trade Act of 1974, Pub. L. No. 93-618, 88 Stat. 1978 (1975) ........................................................1

**REGULATIONS**

Proclamation No. 11012 (Feb. 20, 2026), 91 Fed. Reg. 9339 (Feb. 25, 2026)...................... *passim*

**CONSTITUTIONAL PROVISIONS**

U.S. Const., art. I, § 8..................................................................................................4

**CASES**

*Am. Signature, Inc. v. United States*,
        598 F.3d 816 (Fed. Cir. 2010)..................................................................................8

*Bond v. United States*,
        564 U.S. 211 (2011)..................................................................................................7

*Cash v. Collins*,
        166 F.4th 1046 (Fed. Cir. 2026) .............................................................................3

*Guerrero-Lasprilla v. Barr*,
        589 U.S. 221 (2020)..................................................................................................3

*League of Women Voters of United States v. Newby*,
        838 F.3d 1 (D.C. Cir. 2016)....................................................................................8

*Learning Res., Inc. v. Trump*,
        146 S. Ct. 628 (2026)............................................................................................3, 4

*Loper Bright Enters. v. Raimondo*,
        603 U.S. 369 (2024)..................................................................................................4

*Mosaic Co. v. United States*,
        160 F.4th 1340 (Fed. Cir. 2025) .............................................................................3

*Nken v. Holder*,
        556 U.S. 418 (2009)..........................................................................................2, 6, 7

*Pennsylvania v. New Jersey*,
        426 U.S. 660 (1976)..................................................................................................6

*Rodriguez v. Robbins*,
　　715 F.3d 1127 (9th Cir. 2013) .................................................................................6

*Sunpreme Inc. v. United States*,
　　2017 WL 65421 (Ct. Int'l Trade Jan. 5, 2017) ...................................................7

*United States v. Oakland Cannabis Buyers' Coop.*,
　　532 U.S. 483 (2001)...............................................................................................8

*Winston-Salem/Forsyth Cnty. Bd. of Educ. v. Scott*,
　　404 U.S. 1221 (1971)..............................................................................................2

## OTHER AUTHORITES

*In re: Procedures for Entering a Stay in New IEEPA Tariff Cases*,
　　Admin. Order 25-02 (Ct. Int'l Trade Dec. 23, 2025)......................................5, 6

iii

## I.     INTRODUCTION

On the same day that the Supreme Court struck down President Trump's first attempt to unilaterally impose unlawful tariffs, he shifted to a new legal theory based on Section 122 of the Trade Act of 1974, 19 U.S.C. § 2132. That statute requires the President to impose import restrictions when necessary to address "balance-of-payments deficits" causing "fundamental international payments problems" unless he specifically informs Congress that he declines to act. Despite Section 122's mandatory language—and the longstanding current-account deficit that the President cites to invoke it—President Trump is the first and only president *ever* to invoke Section 122 since its enactment half a century ago.

This Court properly rejected that effort. Defendants now seek a stay of its judgment, including its permanent injunction as to the three Plaintiffs it found had standing. This Court should deny a stay. Defendants have failed to show a likelihood of success on the merits, because this Court correctly concluded that the President failed to identify any "balance-of-payments deficits" within the meaning of Section 122. Defendants' claims of irreparable harm arising from the injunction are likewise unpersuasive, especially given the narrow scope of the injunction— applying only to three importers nationwide. And the public interest favors maintaining the injunction and prohibiting the President's unlawful exactions.

## II.     BACKGROUND

On February 20, President Trump issued a Proclamation purporting to impose tariffs under Section 122. Proclamation No. 11012 (Feb. 20, 2026), 91 Fed. Reg. 9339 (Feb. 25, 2026).

Twenty-four states and two private parties filed suit, arguing that the President's cited bases for invoking Section 122 did not establish what Congress intended by "balance-of-payments deficits" when it enacted the law in 1974. This Court agreed, granting summary

1

judgment and permanently enjoining the Section 122 tariffs. Defendants now appeal and seek a stay of this Court's judgment. This Court should deny that request.

### III.    LEGAL STANDARD

A stay pending appeal is "an exercise of judicial discretion" and "not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (internal quotation marks omitted). Defendants, as the moving parties, bear a "heavy burden" of demonstrating entitlement to this "extraordinary" remedy. *Winston-Salem/Forsyth Cnty. Bd. of Educ. v. Scott*, 404 U.S. 1221, 1231 (1971). This Court considers four factors when deciding whether a stay is warranted: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken*, 556 U.S. at 434 (internal quotation marks omitted). The first two of those factors "are the most critical," *id.*, but all four weigh against staying this Court's judgment.

### IV.    ARGUMENT

#### A.    Defendants Cannot Show They Are Likely to Succeed on Appeal.

This Court correctly concluded that none of the economic measures the President identified constitute a balance-of-payments deficit within the meaning of Section 122. Taken together, the statutory text and historical context confirm that Section 122's "balance-of-payments deficits" referred to the exchange-rate pressures that threatened U.S. reserve assets in a fixed-exchange-rate system. Understood in its historical context, then, Congress in 1974 used "balance-of-payments deficits" to refer to measures in flows of U.S. reserve assets and potential claims on those reserves. As this Court explained, "[r]ather than identifying 'balance-of-payments deficits' as that term was intended in 1974, the Proclamation relies upon current

2

account deficits, and a discussion of 'a large and serious trade deficit.'" Op. & Order ("Order") at 42. Accordingly, because "the President's Proclamation fails to assert that those required conditions have been satisfied" the Proclamation "is invalid, and the tariffs imposed on Plaintiffs are unauthorized by law." *Id.* at 29, 46.

In so concluding, this Court also recognized that accepting the President's interpretation would effectively confer unfettered discretion to impose Section 122 tariffs. "[T]he 'balance of payments' as an accounting principle always nets to zero," so "[t]o the extent that is the case, if the President has the ability to select among the sub-accounts to identify a balance-of-payments deficit, unless every sub-account is balanced, the President would always be able to identify a balance-of-payments deficit." *Id.* at 39.

Defendants' preview of their appellate arguments also fails to persuade. *See* Defs.' Mot for Stay ("Mot.") at 14-15, ECF 53.

The Court's opinion properly examines the legislative history of Section 122 as part of the historical context of its enactment. *See Mosaic Co. v. United States*, 160 F.4th 1340, 1347 (Fed. Cir. 2025) (courts may look to legislative purpose in ascertaining a statute's intended meaning); *see also Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 231-34 (2020) (looking to statutory history to interpret statutory provision); *Cash v. Collins*, 166 F.4th 1046, 1050 (Fed. Cir. 2026) (identifying legislative history as one of "the traditional tools of statutory construction" (internal quotation marks omitted)).

Contrary to defendants' position, the President's statutory interpretation is not entitled to deference "within an economically reasonable understanding" of its meaning. Mot. at 14. The phrase "balance-of-payments deficits" is statutory, and "courts must exercise independent judgment in determining the meaning of statutory provisions." *Loper Bright Enters. v.*

3

*Raimondo*, 603 U.S. 369, 394 (2024). This Court should again reject the President's attempt to expand authority beyond the limited power delegated. *See Learning Res., Inc. v. Trump*, 146 S. Ct. 628, 644 (2026) ("When Congress grants the power to impose tariffs, it does so clearly and with careful constraints.").

Defendants cannot show they are likely to succeed on appeal.

**B.    The CIT's Injunction Will Not Irreparably Harm Defendants.**

Defendants have also failed to show irreparable harm warranting a stay. Defendants' claims of irreparable harm are primarily tied to the injunction entered by the Court. But this Court's injunction applies only to Washington State agencies and instrumentalities, and two small businesses. Defendants' claims of irreparable injury are thus vastly overblown. Meanwhile, the recent administrative imbroglio surrounding the refund of IEEPA tariffs demonstrates that if plaintiffs are required to continue paying the Section 122 tariffs during the pendency of this appeal, they are likely to face needless burdens in seeking refunds of those amounts. The Court should therefore deny defendants' motion for stay.

Defendants' purported injury to institutional interests are necessarily intertwined with the merits. Congress, not the President, has the constitutional "Power To lay and collect Taxes, Duties, Imposts and Excises." U.S. Const., art. I, § 8. This Court's correct ruling is not an "enormous intrusion on the President's conduct of foreign affairs," Mot. at 5; to the contrary, it protects Congress's constitutional authority from executive incursion.

Defendants' recitation of the practical effects of this Court's ruling is no more persuasive. Reading defendants' motion, one would be forgiven for assuming that this Court had enjoined the Section 122 tariffs *in toto*. Although Administration officials claim that this Court's order will irreparably harm "U.S. economic and national security," *id.* at 5, these sky-is-falling assertions are impossible to reconcile with the actual injunction, which is limited to one spice

4

importer, one toy company, and one state government whose state universities pay tariffs directly.

The Administration's concern that "[i]mporters respond to tariff expectations," *id.* at 6, would not be resolved by a stay of this *judgment*. It is the Court's thorough *reasoning*—not the relief it ordered—that undermines the expectation that the Section 122 tariffs will withstand legal scrutiny. Under this Court's injunction, CBP can continue to demand and collect tariffs from every importer, save three. As the experience of the IEEPA tariffs shows, however, wrongly extracted tariffs must be returned with interest. For that reason, however this Court resolves the motion, importers would rightly understand that this Court's opinion disrupts "tariff expectations."

Defendants' contention that the injunction "will disrupt ongoing negotiations that seek to address the balance-of-payments issues the United States is facing" suffers from the same flaw. Mot. at 6. To the extent that the Court's ruling has any effect on ongoing negotiations, it is not due to stopping collection of tariffs from the State of Washington and two small businesses. Rather, the perception of the President's trade authority would be altered only by the legal conclusion that the Section 122 tariffs are unlawful, which a stay would do nothing to change.

Recognizing the limited immediate effect of this Court's judgment, defendants argue that unless the judgment is enjoined, non-parties may seek the same relief. *Id.* at 9-10. But non-parties could do so regardless of a stay. And defendants do not claim that other suits have been filed or offer any explanation of how soon or how broadly relief could be granted in such cases that would meaningfully affect tariff revenue. Even if they could, they never explain why they would be precluded from seeking a stay in later-filed cases if they did have actual broad impacts. Indeed, this Court stayed follow-on cases after its IEEPA decision. *In re: Procedures for*

*Entering a Stay in New IEEPA Tariff Cases*, Admin. Order 25-02 (Dec. 23, 2025). Speculation about possible future harm cannot satisfy the "irreparable injury" showing required to justify a stay. *See Nken*, 556 U.S. at 434-35 ("[S]imply showing some possibility of irreparable injury fails to satisfy the second [stay] factor") (citation modified)).

Defendants next claim that they "'may not be able to retroactively collect the outstanding Section 122 duties'" if they are ultimately upheld. Mot. at 10-11. That of course must be weighed against the interests of those who are bearing the cost of unlawful tariffs. But regardless, defendants' argument again relies on speculation about the ability of parties not subject to this Court's injunction to pay the duties at a future date if they are ultimately upheld. Defendants do not argue that Washington State or its instrumentalities will be unable to pay the Section 122 tariffs if they are ultimately upheld.

Lastly, defendants complain that the administrative burden of refunding the last round of illegal tariffs makes this injunction unfair to them. *Id.* at 14-15. But the government cannot "be heard to complain about damage inflicted by its own hand." *Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976); *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (the federal government "cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns"). In any event, defendants cannot seriously contend that implementing an injunction vis-à-vis three plaintiffs is an unworkable burden. Defendants have failed to establish irreparable harm warranting a stay.

## C.    The Remaining Equitable Factors Weigh Against a Stay.

Finally, consideration of the remaining equitable factors also shows that a stay is unwarranted. To begin, a stay would inflict substantial injury on the plaintiffs. For Washington, the harm is immediate and concrete: the State would continue to pay tariff-driven costs under a proclamation that this Court has held unlawful. And because those tariffs expire on July 24,

6

2026, a stay pending appeal would almost certainly swallow what remains of the statutory period. The practical effect would be to deny Washington meaningful injunctive relief during the only window in which such relief has any value. A stay would reduce the permanent injunction to nothing more than a belated reimbursement remedy.

Nor does delayed reimbursement meaningfully address Washington's injury. Defendants contend that Washington's financial losses during the appeal would "'be made whole' should [it] prevail on appeal and the tariffs are held to be refundable." Mot. at 16-17 (quoting *Sunpreme Inc. v. United States*, Court No. 15-00315, 2017 WL 65421, at *5 (Ct. Int'l Trade Jan. 5, 2017)). But the governing standard for this factor asks whether Washington's injury is substantial, not irreparable. *Nken*, 556 U.S. at 434. And as this Court recognized, experience with refunds of unlawfully collected IEEPA tariffs shows that "there may be significant delays from the time the imposition of tariffs are first held unlawful before refunds are effectuated." Order at 50 n.40. A stay would compel Washington, in its sovereign capacity, to continue paying federal exactions that the CIT has deemed unlawful—on the mere prospect of, at best, a delayed refund. *See Bond v. United States*, 564 U.S. 211, 221 (2011) ("The allocation of powers in our federal system preserves the integrity, dignity, and residual sovereignty of the States.").

Beyond the harms to the parties, the public interest also cuts sharply against a stay. Defendants offer only a bare assertion that "[t]he public interest requires that the President be able to swiftly address identified threats to the United States' economy, military preparedness, and national security." Mot. at 12. But the President "enjoys no inherent authority to impose tariffs during peacetime." *Learning Resources*, 146 S. Ct. at 638. He invoked Section 122 because Congress—not the Executive—controls the conditions under which temporary surcharges may be imposed. *See* Proclamation 11012, 91 Fed. Reg. 9339, ¶¶ 3, 5-6, 13 ("I find

7

8

that fundamental international payments problems within the meaning of section 122 exist …and that special measures to restrict imports are required to address those problems, as authorized by section 122.").

By enacting Section 122, Congress itself determined the circumstances under which such extraordinary tariff authority serves the public interest. Congress deliberately limited that authority to situations in which the statute's specific conditions are met. And when Congress has made those policy determinations for the public good, courts sitting in equity "cannot ignore the judgment of Congress, deliberately expressed in legislation." *United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 497 (2001) (internal quotation marks omitted).

Here, this Court has already held that the President exceeded Section 122's statutory authorization. And courts have repeatedly recognized that there is "no public interest in the perpetuation of unlawful agency action." *League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). To the contrary, "[t]he public interest is served by ensuring that governmental bodies comply with the law," not by delaying the effect of a judgment that enforces it. *Am. Signature, Inc. v. United States*, 598 F.3d 816, 830 (Fed. Cir. 2010). Enforcing this Court's injunction, not suspending it, best advances the public interest Congress itself has defined.

## V.    CONCLUSION

The Court should deny a stay.

8

Respectfully submitted,

**DAN RAYFIELD**
Attorney General for the State of Oregon

BENJAMIN GUTMAN
Deputy Attorney General
DUSTIN BUEHLER
Special Counsel

By: */s/ Brian Simmonds Marshall*
Brian Simmonds Marshall
Leanne Hartmann *
Samuel Kubernick *
Brian Collins *
*Senior Assistant Attorneys General*
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Tel (971) 673-1880
Fax (971) 673-5000
Brian.S.Marshall@doj.oregon.gov
Leanne.Hartmann@doj.oregon.gov
Samuel.A.Kubernick@doj.oregon.gov

*Counsel for the State of Oregon*

**KRISTIN K. MAYES**
Attorney General
State of Arizona

*/s/ Joshua D. Bendor*
Joshua D. Bendor
*Solicitor General*
Syreeta A. Tyrell
Senior Litigation Counsel
Timothy E.D. Horley *
Jaylia Yan *
*Assistant Attorneys General*
2005 North Central Avenue
Phoenix, Arizona 85004
Phone: (602) 542-3333
Joshua.bendor@azag.gov
Syreeta.Tyrell@azag.gov
Timothy.Horley@azag.gov
Jaylia.Yan@azag.gov
ACL@azag.gov

*Counsel for the State of Arizona*

**ROB BONTA**
Attorney General
State of California

By: *s/Shiwon Choe*
Lara Haddad *
*Supervising Deputy Attorney General*
Shiwon Choe
Carolyn Downs *
Samuel Sokolsky *
*Deputy Attorneys General*
California Department of Justice
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
(415) 510-4400
Lara.Haddad@doj.ca.gov
Shiwon.Choe@doj.ca.gov
Carolyn.Downs@doj.ca.gov
Samuel.Sokolsky@doj.ca.gov

*Counsel for the State of California*

**LETITIA JAMES**
Attorney General for the State of New York

By: */s/ Rabia Muqaddam*
Rabia Muqaddam
*Chief Counsel for Federal Initiatives*
Stephen Thompson *
Mark Ladov
Natasha Korgaonkar *
*Special Counsel*
28 Liberty St.
New York, NY 10005
(212) 416-8679
rabia.muqaddam@ag.ny.gov
stephen.thompson@ag.ny.gov
mark.ladov@ag.ny.gov
Natasha.korgaonkar@ag.ny.gov

*Counsel for the State of New York*

**PHILIP J. WEISER**
Attorney General State of Colorado

By: */s/ Sarah H. Weiss*
Sarah H. Weiss
*Senior Assistant Attorney General*
1300 Broadway, #10
Denver, CO 80203
(720) 508-6000
Sarah.Weiss@coag.gov

*Counsel for the State of Colorado*

**KATHLEEN JENNINGS**
Attorney General
State of Delaware

By: */s/ Ian R Liston*
Ian R. Liston
*Director of Impact Litigation*
Vanessa L. Kassab
*Deputy Attorney General*
Rose Gibson *
*Assistant Attorney General*
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 683-8875
Ian.Liston@Delaware.gov

*Counsel for the State of Delaware*

**WILLIAM TONG**
Attorney General of Connecticut

By: */s/ Michael Skold*
Michael Skold
*Solicitor General*
165 Capitol Ave
Hartford, CT 06106
(860) 808-5020
Michael.Skold@ct.gov

*Counsel for the State of Connecticut*

**KWAME RAOUL**
Attorney General
State of Illinois

By: */s/ Gretchen Helfrich*
Cara Hendrickson
*Executive Deputy Attorney General*
Gretchen Helfrich
*Deputy Chief, Special Litigation Bureau*
Office of the Illinois Attorney General
115 South LaSalle Street
Chicago, IL 60603
Tel. (312) 814-3000
Cara.Hendrickson@ilag.gov
Gretchen.helfrich@ilag.gov

*Counsel for the State of Illinois*

10

**OFFICE OF THE GOVERNOR** *ex rel.*
**Andy Beshear**, in his official capacity as
Governor of the Commonwealth of Kentucky

By: */s/ S. Travis Mayo*
S. Travis Mayo *
*General Counsel*
Laura C. Tipton *
*Deputy General Counsel*
Office of the Governor
501 High Street
Frankfort, KY 40601
(502) 564-2611
travis.mayo@ky.gov
laurac.tipton@ky.gov

*Counsel for Governor Andy Beshear*

**ANTHONY G. BROWN**
Attorney General for the State of Maryland

By: */s James C. Luh*
James C. Luh *
*Senior Assistant Attorney General*
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
410-576-6411
jluh@oag.maryland.gov

*Counsel for the State of Maryland*

**AARON M. FREY**
Maine Attorney General

By: */s/ Katherine W. Thompson*
Katherine W. Thompson *
*Special Counsel*
Office of the Attorney General
6 State House Station
Augusta, ME 04333
Tel.: 207-626-8455
Fax: 207-287-3145
Kate.thompson@maine.gov

*Counsel for the State of Maine*

**ANDREA JOY CAMPBELL**
ATTORNEY GENERAL OF
MASSACHUSETTS

By: */s/ Katherine Dirks*
Katherine Dirks
  *Chief State Trial Counsel*
Office of the Massachusetts Attorney General
1 Ashburton Place
Boston, MA 02108
(617) 963-2277
katherine.dirks@mass.gov

*Counsel for the Commonwealth of Massachusetts*

11

**DANA NESSEL**
Attorney General of Michigan

By: */s/ Neil Giovanatti*
Neil Giovanatti
*Assistant Attorneys General*
Michigan Department of Attorney General
525 W. Ottawa
Lansing, MI 48909
(517) 335-7603
GiovanattiN@michigan.gov

*Counsel for the State of Michigan*


**AARON D. FORD**
Attorney General

By: */s/ K. Brunetti Ireland*
K. Brunetti Ireland *
*Chief of Special Litigation*
Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
kireland@ag.nv.gov


*Counsel for the State of Nevada*

**KEITH ELLISON**
Attorney General
State of Minnesota

By: */s/ Lindsey E. Middlecamp*
PETER J. FARRELL (#0393071)
*Deputy Solicitor General*
LINDSEY E. MIDDLECAMP (#0392589)
*Special Counsel*
445 Minnesota Street, Suite 600
St. Paul, Minnesota 55101-2125
(651) 757-1010 (Voice)
(651) 282-5832 (Fax)
Peter.farrell@ag.state.mn.us
Lindsey.middlecamp@ag.state.mn.us

*Counsel for the State of Minnesota*


**JENNIFER DAVENPORT**
Attorney General of New Jersey

By: */s/ Lucy I. Sprague*
Lucy I. Sprague *
David N. Birch *
*Deputy Attorneys General*
124 Halsey Street, 5th Floor
Newark, New Jersey 07101
(609) 696-5363
Lucy.Sprague@law.njoag.gov


*Counsel for the State of New Jersey*

12

**RAÚL TORREZ**
Attorney General of New Mexico

By: */s/ Amy Senier*
AMY SENIER
*Senior Counsel*
New Mexico Department of Justice
P.O. Drawer 1508
Santa Fe, NM 87504-1508
505-490-4060
asenier@nmdoj.gov

*Counsel for the State of New Mexico*


**JOSH SHAPIRO,**
in his official capacity as Governor of the
Commonwealth of Pennsylvania

JENNIFER SELBER
General Counsel

By: */s/ Jacob B. Boyer*
Jacob B. Boyer *
*Deputy General Counsel*
Pennsylvania Office of the Governor
30 N. 3rd St., Suite 200
Harrisburg, PA 17101
(717) 460-6786
jacobboyer@pa.gov

*Counsel for Governor Josh Shapiro*


**JEFF JACKSON**
Attorney General of North Carolina

LAURA HOWARD
Chief Deputy Attorney General

By: */s/ Daniel T. Wilkes*
Daniel T. Wilkes *
*Assistant Deputy Attorney General*
North Carolina Department of Justice
PO Box 629
Raleigh, NC 27602
919-716-6415
dwilkes@ncdoj.gov

*Counsel for the State of North Carolina*


**PETER F. NERONHA**
Attorney General of Rhode Island

By: */s/ Alex Carnevale*
Alex Carnevale *
*Special Assistant Attorney General*
Office of the Attorney General - State of
Rhode Island
150 South Main Street
Providence, RI 02903
(401) 274 4400
acarnevale@riag.ri.gov

*Counsel for the State of Rhode Island*

13

**CHARITY R. CLARK**
Attorney General of Vermont

By: */s/ Ryan P. Kane*
RYAN P. KANE
*Deputy Solicitor General*
109 State Street
Montpelier, VT 05609
(802) 828-2153
ryan.kane@vermont.gov


*Counsel for the State of Vermont*

**NICHOLAS W. BROWN**
Attorney General
State of Washington

By: */s/ Freeman E. Halle*
FREEMAN E. HALLE, WSBA 61498
TODD SIPE, WSBA 23203
*Assistant Attorneys General*
Office of the Washington State Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744
freeman.halle@atg.wa.gov
todd.sipe@atg.wa.gov


*Counsel for the State of Washington*

**JAY JONES**
Attorney General of Virginia

By: */s/ Tillman J. Breckenridge*
Tillman J. Breckenridge *
*Solicitor General*
202 N. 9th Street
Richmond, Virginia 23219
Tel: (804) 786-2071
Fax: (804) 786-1991
solicitorgeneral@oag.state.va.us


*Counsel for the Commonwealth of Virginia*

**JOSHUA L. KAUL**
Attorney General of Wisconsin

By: */s/ Brian P. Keenan*
Brian P. Keenan * State Bar #1056525
*Assistant Attorney General*
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-0020
(608) 294-2907 (Fax)
brian.keenan@wisdoj.gov


*Counsel for the State of Wisconsin*

*\* Admission application pending or forthcoming*

Dated: May 19, 2026

14

## CERTIFICATE OF COMPLIANCE

Pursuant to U.S. Court of International Trade Standard Chambers Procedure 2(B)(1), I certify that this Plaintiff States' Response To Defendants' Motion To Stay, including headings, footnotes, and quotations (but excluding the motion, table of contents, table of authorities, counsel's signature blocks, this certificate, and the proposed order) complies with the 5,000-word limit for this brief (ECF 57). The word count for this submission, as computed by the word processing system used to prepare the brief, is 2,361 words.

Respectfully submitted,

*/s/ Brian Simmonds Marshall*
Brian Simmonds Marshall
*Counsel for the State of Oregon*

15