NOTE:  This order is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

---

**STATE OF OREGON, STATE OF ARIZONA, STATE OF CALIFORNIA, STATE OF NEW YORK, STATE OF COLORADO, STATE OF CONNECTICUT, STATE OF DELAWARE, STATE OF ILLINOIS, OFFICE OF THE GOVERNOR EX REL. ANDY BESHEAR, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF THE COMMONWEALTH OF KENTUCKY, STATE OF MAINE, STATE OF MARYLAND, COMMONWEALTH OF MASSACHUSETTS, STATE OF MICHIGAN, STATE OF MINNESOTA, STATE OF NEVADA, STATE OF NEW JERSEY, STATE OF NEW MEXICO, STATE OF NORTH CAROLINA, JOSH SHAPIRO, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF THE COMMONWEALTH OF PENNSYLVANIA, STATE OF RHODE ISLAND, STATE OF VERMONT, COMMONWEALTH OF VIRGINIA, STATE OF WASHINGTON, STATE OF WISCONSIN,**
*Plaintiffs-Appellees*

v.

**DONALD J. TRUMP, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNITED STATES, DEPARTMENT OF HOMELAND SECURITY, MARKWAYNE MULLIN, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY, UNITED STATES CUSTOMS AND BORDER PROTECTION, RODNEY S. SCOTT, IN HIS**

**OFFICIAL CAPACITY AS COMMISSIONER OF U.S. CUSTOMS AND BORDER PROTECTION, UNITED STATES,**
*Defendants-Appellants*

-------------------------------------------------

**BURLAP AND BARREL, INC., BASIC FUN, INC.,**
*Plaintiffs-Appellees*

**v.**

**DONALD J. TRUMP, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNITED STATES, EXECUTIVE OFFICE OF THE PRESIDENT, UNITED STATES, UNITED STATES CUSTOMS AND BORDER PROTECTION, RODNEY S. SCOTT, IN HIS OFFICIAL CAPACITY AS COMMISSIONER OF U.S. CUSTOMS AND BORDER PROTECTION, JAMIESON GREER, IN HIS OFFICIAL CAPACITY AS U.S. TRADE REPRESENTATIVE, OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, DEPARTMENT OF HOMELAND SECURITY, MARKWAYNE MULLIN, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY,**
*Defendants-Appellants*

---

2026-1804, 2026-1805

---

Appeals from the United States Court of International Trade in Nos. 1:26-cv-01472-3JP, 1:26-cv-01606-3JP, Senior Judge Timothy C. Stanceu, Chief Judge Mark A. Barnett, Judge Claire R. Kelly.

---

## ON MOTION

PER CURIAM.

## O R D E R

The United States Court of International Trade (CIT) enjoined the federal government from imposing duties pursuant to Proclamation No. 11012, 91 Fed. Reg. 9339 (Feb. 20, 2026), and 19 U.S.C. § 2132(a)(1) (Section 122) against the State of Washington and two private businesses. The federal government moves to stay the injunction pending appeal. Appellees oppose.

Without prejudicing the ultimate disposition of these consolidated appeals by a merits panel, we conclude based upon the papers submitted that a stay is warranted under the circumstances. In reaching this conclusion, we have considered the traditional four stay factors: (1) whether the movant has made a strong showing of likelihood of success on the merits; (2) whether the movant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *See Nken v. Holder*, 556 U.S. 418, 434 (2009).

*First*, regarding the likelihood of success on the merits, we conclude that this factor favors the grant of a stay.

The federal government argues that the CIT misinterpreted Section 122 by narrowing "balance-of-payments deficit[ ]" to refer to only three measures of balance-of-payment deficit: "(1) liquidity, (2) official settlements, and (3) basic balance." *Oregon v. United States*, No. 26-01472-3JP, 2026 WL 1257669, at *16 (Ct. Int'l Trade May 7, 2026). According to the federal government, there are four reasons why the CIT majority's interpretation was incorrect. First, the federal government argues that the CIT majority relied on weak and unpersuasive legislative history to interpret the meaning of "balance-of-payments deficit[ ]"

in Section 122. Second, the federal government contends that the CIT majority's account of the legislative history is in any event inaccurate and incomplete. And, as the CIT dissent noted, other evidence in the legislative history supports a better inference that, rather than being limited to three measurement types, Congress left "balance of payments" undefined to afford some discretion as to the method of measurement. *See Oregon*, 2026 WL 1257669, at \*24–29 (Stanceu, J., dissenting). Third, the federal government reasons that, even if Congress was contemplating the meaning of "balance-of-payments deficit[ ]" in certain places in the legislative history, this does not mean that Congress intended the phrase to be limited to that meaning. Finally, the federal government alleges that the CIT majority incorrectly believed that Section 122 requires specifying a single economic methodology for determining a "balance-of-payments deficit[ ]." Rather, the federal government argues that since the phrase is a term of art with multiple economically accepted meanings, the best reading of Section 122 is that "balance-of-payments deficit[ ]" means "balance-of-payments deficit as determined using an economically reasonable methodology." Emergency Mot. for a Stay Pending Appeal and an Immediate Administrative Stay at 20, ECF No. 4 (Mot.). And while the CIT majority had nondelegation concerns, the federal government argues that nondelegation plays a limited role in the foreign policy realm and that, even if applicable, Section 122 would survive a nondelegation challenge.

Plaintiffs disagree. For instance, the private plaintiffs embrace the CIT majority's legislative history arguments and argue that the legislative history is more robust than the federal government suggests. The state plaintiffs similarly argue that the statutory text and historical context do not support the federal government's interpretation. Unlike the private plaintiffs, who endorse the CIT majority's interpretation, the state plaintiffs argue that "balance-of-payments deficit[ ]" has a meaning related to concerns

under our country's prior fixed-exchange-rate system that is inapplicable in our modern floating-exchange-rate system. All plaintiffs, however, agree that the CIT majority was correct to conclude that Proclamation No. 11012 fails to meet the criteria necessary to invoke Section 122 and is therefore ultra vires. The private plaintiffs also reiterate nondelegation concerns—namely, the lack of an intelligible principle—with the federal government's proffered interpretation. Private plaintiffs therefore stress that the CIT majority's interpretation of Section 122, which does not suffer from the same alleged nondelegation concerns, is the best reading. The private plaintiffs also argue that the federal government's position contradicts its previous position taken in separate litigation over the validity of tariffs under IEEPA.

We conclude that the federal government has made a sufficient showing that it is likely to succeed on the merits. Although we do not offer our own interpretation of Section 122 at this stage, we are persuaded by the federal government's argument that the CIT majority's interpretation—that "balance-of-payments deficit[ ]" is limited to deficits measured by liquidity, official settlements, or basic balance—may be incorrect. We find that the legislative history cited by the federal government and the CIT dissent strongly call into question the conclusion that Congress intended "balance-of-payments deficit[ ]" to be measured only by the three methods enumerated by the CIT majority. Given that the legislative history contains ample support for the federal government's proposed gloss, we do not agree that the legislative history provides a clear indication that Congress intended the CIT majority's narrow interpretation nor that it is the best reading. We are not persuaded at this time by plaintiffs' arguments that broader readings of the statute would pose nondelegation concerns. There is merit to the federal government's argument that Section 122 already contains the guardrails required by the nondelegation doctrine such that it is not

necessary to set out precise "balance-of-payments deficit[ ]" measurement methods for the statute to survive challenge. *Cf. FCC v. Consumers' Rsch.*, 606 U.S. 656, 672–73 (2025). This factor therefore favors the federal government.

*Second*, regarding irreparable harm to the movant, we conclude that this factor favors the grant of a stay.

The federal government offers three reasons it would be irreparably harmed in the absence of a stay. First, the federal government contends that injunctions against the Executive Branch implicating foreign policy irreparably harm the government in general, and that specific harm is further shown based on the potential for acceleration of shipments into the country to avoid the enjoined tariffs. This is the case, the federal government argues, notwithstanding the injunction's narrow scope because other plaintiffs are highly likely to seek similar relief if the injunction remains in place. Second, the federal government argues that because the CIT's order requires tariffs paid by plaintiffs to be refunded with interest, it is possible that the federal government will suffer "unrecoverable financial losses" because, even if it prevails on appeal, it will be unable to recoup the duties owed it under Section 122. Mot. at 24. Third, the federal government maintains that the injunction would impose severe burdens on U.S. Customs and Border Protection (CBP) because compliance would require CBP to reprogram its system to award refunds.

Plaintiffs contest this reasoning. Plaintiffs, for instance, argue that the federal government is not harmed by an injunction against this policy because it is unconstitutional in the first instance, and because the injunction is narrow in scope. And, plaintiffs claim, the harms elucidated by the government are either speculative in nature or do not actually flow from the injunction entered. Plaintiffs also maintain that CBP can easily track the duties owed by the parties to the injunction and, if necessary, extend the period for liquidation to ensure all Section 122

duties are recouped. Plaintiffs further contend that CBP's administrative burdens are not cognizable harms because they flow from the government's own illegal actions.

While all parties make persuasive arguments, we ultimately conclude that the federal government is likely to suffer irreparable harm absent a stay. As to plaintiffs' argument that the injunction is limited in scope, we conclude that the scope of this relief does not necessarily mean that *no* irreparable harm may result. For one, we are persuaded by the federal government's argument that others will file follow-on actions seeking the same relief if the injunction is upheld, effectively expanding the injunction's impact beyond the limited scope of relief awarded here. As the federal government points out on reply, at least two such suits have already been filed. *See* Reply in Supp. of Emergency Mot. for a Stay Pending Appeal at 8, ECF No. 47 (first citing *Cleaner's Supply Inc. v. United States*, No. 26-cv-3012 (filed May 25, 2026); and then citing *Tarte Cosm. v. CBP*, No. 26-cv-3022 (filed May 29, 2026)). Additionally, we find plausible the government's argument that an injunction, even limited in scope, still impacts the nation's trade policy irreparably. While there is merit in the plaintiffs' argument that any damage to the government's negotiating position abroad or ability to restrict the acceleration of imports stems from the CIT's *reasoning* and not necessarily the *injunctive relief* it ordered, we think the imprimatur of an injunction solidifies this reasoning and has important signaling value. *Cf. Nken*, 556 U.S. at 428 ("When a court employs 'the extraordinary remedy of injunction,' it directs the conduct of a party and does so with the backing of its full coercive powers." (citation omitted)). And as to plaintiffs' argument that the federal government's alleged harms are purely speculative, we find that the federal government has, at least for the purposes of this preliminary stay ruling, plausibly demonstrated irreparable harm associated with difficulties in recouping Section 122 duties if

the injunction is left in place. This factor therefore favors the federal government.

*Third*, regarding substantial injury to the other parties interested, we also conclude this factor favors the federal government.

The federal government argues this factor supports a stay because if plaintiffs ultimately prevail, they will be refunded and therefore will not be substantially harmed during the appeal. The plaintiffs disagree. The state plaintiffs respond that the appropriate inquiry focuses on the substantiality of plaintiffs' injuries, rather than irreparability, and that reimbursement does not meaningfully address its injury given the likely delay in refunds. The private plaintiffs primarily argue that their harm extends beyond the payment of tariffs, asserting that they will suffer substantial injuries that a refund cannot adequately redress, including operational disruptions, reputational harm, lost profits, and constraints on growth and innovation. The federal government replies that these additional alleged harms are unrelated to a potential stay because they arise from the private plaintiffs' general concerns regarding their ability to satisfy their tariff payments and remain solvent. That is, regardless of the stay, the plaintiffs will have to account for the possibility they will lose and be required to pay the tariffs, thus incurring the nonmonetary harms they allege, or else choose not to, in which case they will face none of those harms. In either event, the harm flows from plaintiffs' own risk calculus rather than the stay itself.

We conclude that the plaintiffs will not be substantially injured by the stay. We are persuaded that, if the tariffs are ultimately found unlawful, refunds with interest reduce any harm from the initial payments themselves or any potential refund delays. As to the harms identified that cannot be resolved through refunds with interest, we agree with the federal government that those alleged harms do

not necessarily stem from the stay but rather are a consequence of accounting for the undisputed risk that plaintiffs may ultimately owe the tariffs. This factor therefore favors the federal government.

*Finally*, regarding the public interest, we conclude this factor is neutral. The parties do not extensively brief this equitable factor, but their arguments can essentially be reduced as follows: while the federal government contends that the public interest is harmed when irreparable harm is done to the federal government, plaintiffs contend that the public interest is harmed by perpetuating an unlawful government program of tariffs. On the one hand, if the CIT's judgment is upheld on appeal, there is plain force to plaintiffs' argument. On the other, if the CIT's judgment is reversed, then their argument rings hollow, and our finding that the federal government has plausibly shown at least some irreparable harm would prevail. Ultimately, however, at this preliminary stage, we do not state a final conclusion as to the correctness of the CIT's judgment. Therefore, this factor does not point in favor of granting or denying the motion.

Since the majority of the required factors favor the federal government, we grant the motions for stay pending appeal.

Accordingly,

IT IS ORDERED THAT:

(1)  The motions for a stay pending appeal are granted.

(2)  The Clerk of Court shall transmit a copy of this order to the merits panel assigned to these appeals.

FOR THE COURT

Jarrett B. Perlow
Clerk of Court

June 11, 2026
Date